UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL.<br>ANTHONY BOYCE (R52162), <br><br>Petitioner,<br><br>v.<br><br>MARCUS HARDY, WARDEN<br>STATEVILLE CORRECTIONAL CENTER,<br><br>Respondent. | No. 11 C 1972<br><br>Judge Rebecca R. Pallmeyer |

### MEMORANDUM OPINION AND ORDER

*Pro se* Petitioner Anthony Boyce ("Boyce") has brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court denies the petition [1], and declines to grant a certificate of appealability.

### FACTUAL AND PROCEDURAL HISTORY

The following facts are drawn from the state court record and are entitled to a presumption of correctness, a presumption that Petitioner can rebut only with clear and convincing evidence. *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)). Petitioner was convicted of first-degree murder and sentenced to natural life imprisonment in the Circuit Court of Cook County for the murder of Lorenzo Hamilton ("Hamilton"). (*People v. Boyce*, 395 Ill. App. 3d 1112, 986 N.E.2d 804, Order of the Ill. App. Ct., 1st Dist., Dec. 30, 2009, hereinafter "Ill. App. Ct. Order," Ex. A to St. Ct. R. [21], at 1.) The evidence established that Petitioner was the mastermind and strong arm behind the plan to murder Hamilton for insurance proceeds. Boyce talked his girlfriend, Latoya Williams ("Williams"), into fraudulently posing as Hamilton's girlfriend and obtaining an insurance policy on Hamilton's life. (*Id.*) Petitioner also visited the insurance office that issued the policy on multiple occasions with his cousin, Patrick Davis ("Davis"). Boyce did most of the talking, while

Davis pretended to be Hamilton. (*Id.* at 1-2.) Hamilton was subsequently murdered, and Petitioner forced Williams to file an insurance claim, beating her severely on more than one occasion when she expressed reservations. (*Id.*)

At trial, Davis testified that Petitioner was not involved with the crime; Davis claimed that it was Williams who came up with the plan, and that Davis had pulled the trigger. (*Id.* at 2.) The prosecution impeached that testimony, however, with Davis's prior statement to the police in which Davis asserted that Petitioner was behind the scheme, that Davis witnessed Petitioner shoot Hamilton in the back of the head, and that Petitioner had confessed to Davis that he had murdered Hamilton. (*Id.*) The prosecution also introduced evidence of three prior episodes in which Petitioner had arranged for accomplices' legs to be broken in order to submit false insurance claims alleging the injuries were the result of collisions with insured automobiles. (*Id.*)

The trial court instructed the jury that it could find Boyce guilty of first-degree murder if it found any of the following: (1) "he intended to kill or do great bodily harm to [Hamilton]"; (2) "he knew that his act would cause death to [Hamilton]"; (3) "he knew that his acts created a strong probability of death or great bodily harm to [Hamilton]"; or (3) Boyce, or someone whose conduct he was legally responsible for, killed Hamilton in the course of "committing the offense of insurance fraud, or . . . committing the offense of conspiracy to commit insurance fraud." (Supp. Report of Proceedings, Vol. 1, Ex. V. to St. Ct. R., at 94.) The jury was also instructed that Boyce was responsible for the criminal acts of others if "he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense." (*Id.* at 90.) The jury found Boyce guilty of first-degree murder, but also made the specific finding that the evidence had not established that Boyce had fired the weapon that killed Hamilton. (*Id.* at 113-14.)

After concluding his state direct appeal and post-conviction proceedings, Petitioner filed this § 2254 petition, raising two claims: (1) Petitioner was improperly convicted under Illinois'

2

felony murder statute; and (2) the prosecution wrongfully introduced the evidence regarding the beatings of Williams and the car insurance scams. (Pet'r's Pet. [1] at 8-19.) Respondent Marcus Hardy ("Hardy"), Warden of Stateville Correctional Center, argues that the petition should be dismissed because the claims are procedurally defaulted, and Petitioner cannot excuse his defaults. Specifically, Respondent asserts that Petitioner failed to exhaust the claims through a complete round of review, including in a timely petition for leave to appeal ("PLA") before the Supreme Court of Illinois.

In response to the procedural default argument, Petitioner blames his failure to file a PLA on the advice he received from Jennifer Bonjean ("Bonjean"), the attorney who represented him on direct appeal. The state appellate court issued its decision on Boyce's direct appeal on December 30, 2009. (Ill. App. Ct. Order at 1.) In a letter dated March 5, 2010, Bonjean explained to Petitioner that the appellate court had affirmed his conviction and sentence, and provided a copy of the order. (Letter from Bonjean to Boyce of 3/5/10, Ex. A to Pet'r's Rep. [22].) She advised Petitioner that, "As you know, the appellate court affirmed your conviction and sentence on appeal . . . [y]our next course of action would be to file a post-conviction petition." (*Id.*). The letter makes no mention of the possibility of, or need for, a petition for leave to appeal to the Illinois Supreme Court. In fact, Bonjean drafted the letter roughly a month after the thirty-five-day PLA deadline had passed. The record is silent as to the question of whether Bonjean had any other communications with Petitioner, but for purposes of this decision the court will assume that her March 2010 letter contained the only advice she gave him after dismissal of his direct appeal.

It appears that Petitioner followed Bonjean's advice. In June 2010, he submitted a *pro se* petition [21-7] under Illinois's Post Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County. He later brought a *pro se* supplemental petition in July 2010. (Mot. to Present New Pro Se Pet. [21-8], Ex. G to St. Ct. R.) Neither petition mentioned the

3

matter of a PLA on direct appeal, nor Bonjean's silence on that issue. The supplemental petition did raise an unrelated ineffective assistance of appellate counsel claim regarding Bonjean: specifically, her failure to challenge, on direct appeal, the trial court's introduction of prejudicial evidence. (*Id.* at 6.) The state trial court denied the post-conviction petition on September 22, 2010. (*People v. Boyce*, No. 01 CR 16813-02, Order of the Cir. Ct. of Cook Cnty., Criminal Div., Sept. 22, 2010, Ex. I to St. Ct. R.) Petitioner filed a notice of appeal from that ruling after the filing deadline, but the Illinois courts denied leave to proceed on that late notice. (Notice of Appeal, Ex. J to St. Ct. R.; Certified Statement of Conviction/Disposition, Ex. N to St. Ct. R.) Thus, neither on direct appeal, nor in his state post-conviction proceedings, did Petitioner present his claims before all levels of the Illinois courts.

In March 2011, Petitioner filed this federal habeas corpus petition along with a motion to stay these proceedings [4]. The case was originally assigned to Judge Blanche M. Manning. In his stay motion, Petitioner asserted that Bonjean had provided misleading advice, and that Petitioner now understood that he needed to file a PLA presenting his claims through one full round of state court review in order to preserve the claims presented to his court. (Mot. for Stay at 1.)

Judge Manning granted the motion [7], and in April 2011, Petitioner moved for leave to file a late PLA [21-5] before the Illinois Supreme Court. The Supreme Court denied the motion on May 20, 2011 [21-6]. With the denial ending Petitioner's belated exhaustion efforts, Judge Manning lifted the stay, and the parties briefed the habeas petition. As mentioned above, Respondent argues that the present claims were procedurally defaulted due to Petitioner's failure to raise them in a timely PLA on direct appeal. Petitioner responds that the failure should be excused due to Bonjean's allegedly misleading advice. The case was reassigned to this court on December 6, 2012 [23] following Judge Manning's retirement.

4

**DISCUSSION**

I.  **Requirement of Exhaustion**

To preserve a claim for federal habeas corpus review, the prisoner is required to present the operative facts and controlling legal principles through one complete round of review in the Illinois courts, including in a timely PLA to the Supreme Court of Illinois. *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) ("Under Section 2254's exhaustion requirement, the petitioner must assert his federal claim through one complete round of state-court review, either on direct appeal or in post-conviction proceedings."). Both of the claims Petitioner presents here—the felony murder claim and the prior-bad-acts evidence claim—were raised before the Appellate Court of Illinois on direct appeal (Brief and Argument for Def.-Appellant [21-2] at 1), but Petitioner failed to present them to the Illinois Supreme Court in a timely PLA. Petitioner also could have exhausted his claims by presenting them in a full round of review in his state post-conviction proceedings; but he did not file a PLA from the decision affirming the dismissal of that petition, either. Thus, there has never been a complete round of state court review on any claim in this case.

Petitioner's belated attempt to file a PLA in April 2011 does not cure this deficiency. The state appellate court opinion on direct appeal was issued on December 30, 2009. Petitioner had thirty-five days to bring his PLA in the Supreme Court of Illinois. ILL. SUP. CT. R. 315(b). Boyce did not meet this procedural requirement, and the Supreme Court of Illinois enforced its timeliness rule. This court is required to respect the Illinois Supreme Court's reliance on its firmly established and regularly enforced thirty-five day PLA deadline. *Thompkins*, 698 F.3d at 986 ("'A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied.'") (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)); *Cawley v. DeTella*, 71 F.3d 691, 694 (7th Cir. 1995) ("if the state in which the habeas petitioner was convicted would treat failure to appeal as a procedural default barring further

5

review, that default likewise bars federal review of the claim"). Accordingly, Petitioner's claims are procedurally defaulted.

Procedural default may be excused where a petitioner can establish either a fundamental miscarriage of justice or cause and prejudice. The record here does not support a finding of a fundamental miscarriage of justice. To establish a fundamental miscarriage of justice, or actual innocence, the petitioner would have to demonstrate that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Morales v. Johnson*, 659 F.3d 588, 605 (7th Cir. 2011) (internal quotations omitted)). Petitioner has not presented any new evidence of innocence. The only evidence on which he relies is the testimony of Davis, his co-conspirator, that Petitioner was not the ringleader of the murder/fraud scheme. But Davis testified at Petitioner's original trial. The jury credited the prosecution's evidence at that trial, and this court has no authority to reject that determination. *Ruvalcaba v. Chandler*, 416 F.3d 555, 560 (7th Cir. 2005) ("'Federal courts do not reevaluate the credibility of witnesses when conducting habeas review of state trials.'") (quoting *Stone v. Farley*, 86 F.3d 712, 718 (7th Cir. 1996)).

Petitioner has also asserted that Bonjean's advice constitutes cause and prejudice sufficient to excuse his default. Cause is an "'external impediment' prevent[ing] the petitioner from presenting his claim." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (quoting *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)). Traditionally, external impediments sufficient to qualify as cause are: "(1) 'interference by officials that makes compliance . . . impractical;' (2) constitutionally ineffective assistance of counsel; and (3) 'a showing that the factual or legal basis for the claim was not reasonably available'" to the petitioner. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his actual and substantial disadvantage, infecting his entire trial with error of

6

constitutional dimensions.'" *Promotor*, 628 F.3d at 887 (quoting *Lewis*, 390 F.3d at 1026) (emphasis omitted).

The only relevant external impediment in this case is the alleged ineffective assistance of counsel on the part of Bonjean. As a general matter, attorney error does not result in sufficient cause to excuse procedural default when there is no constitutional right to effective assistance of counsel. *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-54 (1991)). Put another way, the cause itself must be an independent constitutional violation. *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) (citing *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). Furthermore, an ineffective assistance of counsel claim constituting cause must itself be exhausted through one complete round of state court review in order excuse the default of the underlying claim. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Thus, until recently, it was clear that Bonjean's advice would fall short of establishing cause for failure to exhaust for two reasons: because Petitioner did not have a constitutional right to the assistance of counsel for a discretionary appeal,[1] and because Petitioner did not exhaust his ineffective assistance claim.[2]

After briefing in this case, however, the Supreme Court issued two decisions that alter the landscape of the "cause and prejudice" test: *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and

---

[1] The constitutional right to counsel extends only to direct appeals brought as a matter of right, not to discretionary appeals. *Resendez v. Smith*, 692 F.3d 623, 626 (7th Cir. 2012). Bonjean's allegedly improper advice technically occurred after the completion of review by the state appellate court. The PLA, although necessary to exhaust the claim for federal habeas corpus review, does not constitute a proceeding in which the prisoner has a constitutional right to effective assistance counsel. *Speener v. Maples*, 150 Fed. Appx. 541, 543 (7th Cir. 2005) ("A defendant is not entitled . . . to effective assistance of post-appeal counsel . . . .") (citing *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998)). 2009).

[2] Petitioner's state post-conviction petition did present an unrelated ineffective assistance ground against Bonjean, but did not mention her failure to advise him about the need to file a PLA in order to preserve his claims for federal habeas corpus review. An unrelated ineffective assistance of counsel ground is insufficient to exhaust the present ineffective

*Maples v. Thomas*, 132 S. Ct. 912 (2012). *Martinez* is unhelpful here. In that case, the Court held that ineffective assistance of counsel at the initial review stage of post-conviction proceedings may constitute cause for a prisoner's procedural default when the underlying defaulted claim is one of ineffective assistance on the part of trial counsel. *Martinez*, 132 S. Ct. at 1317. In such circumstances, the post-conviction proceedings are effectively the first time that the ineffective assistance of trial counsel claim is being raised in the state courts. *Id.* at 1316-17. That rule has no bearing on this case, however, as the underlying defaulted claims are challenges to the felony murder conviction and to the introduction of so-called "prior bad acts."

*Maples* is more relevant to the instant case. In *Maples,* the Court recognized that, in some circumstances, attorney misconduct may constitute cause even when that action occurred during the state post-conviction proceedings where there is no constitutional right to counsel. *Maples,* 132 S. Ct. at 922-23. The Court limited its ruling, however, to situations in which the prisoner's attorney had completely abandoned his defense. Abandonment qualifying as cause for procedural default under *Maples* is "evidenced by counsel's near-total failure to communicate with Petitioner or to respond to Petitioner's many inquiries and requests over a period of several years." *Id.* at 923 (quoting *Holland v. Florida*, 130 S. Ct. 2549, 2568 (2010)). Common attorney negligence does not constitute abandonment, but falls under the standard rule that attorney error cannot constitute cause when the alleged error occurred in a proceeding where there is no constitutional right to counsel. *Id.* at 922-93. The Seventh Circuit has not yet interpreted or applied *Maples.* Though the record concerning Bonjean's communication with Petitioner may be incomplete, it appears that she abandoned Boyce by failing to offer timely advice to file a PLA on direct appeal. Without making a factual determination on this issue, the

---

assistance of counsel argument regarding the PLA advice. *See Pole*, 570 F.3d at 934-95 (7th Cir. 2009).

8

court finds the facts in this case similar enough to warrant the review of Petitioner's claims on the merits.

## II.     Merits of Petitioner's Claims

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") entitles a prisoner to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the United States Constitution.  28 U.S.C. § 2254.  For claims that were adjudicated in state court, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in that state court proceeding.  28 U.S.C. § 2254(d)(1), (2); *see Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011).  Accordingly, "errors of state law in and of themselves are not cognizable on habeas review."  *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004), citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Instead, a federal habeas court has power only to remedy "violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Id.*

Boyce raises two claims in his § 2254 petition, both of which rely on Illinois law.  First, he argues that the instruction that he could be found guilty on a theory of felony murder was erroneous, and that the possibility that the jury's general verdict was based upon this premise warrants the reversal of his conviction.  (Pet'r's Pet. at 8.)  Specifically, Boyce contends that conspiracy to commit insurance fraud is not a "forcible felony" that could serve as a predicate for a felony murder conviction under Illinois law[3]; and, further, that Hamilton was not killed during

---

[3]     An Illinois defendant may be convicted of first-degree murder if he causes the victim's death while "attempting or committing a forcible felony other than second degree murder."  720 ILCS 5/9-1(a)(3).  Illinois defines "forcible felony" as including a list of specified offenses, plus "any other felony which involves the use or threat of physical force or violence

the commission of that offense. (*Id.* at 8-13.) Second, Boyce claims that he was unduly prejudiced by the admission of evidence he argues was inadmissible under Illinois law: specifically, the evidence that he had (1) participated in prior insurance schemes; and (2) beaten Williams. (*Id.* at 15-17.) Petitioner raised both of these issues in his direct appeal, and both were rejected by the Illinois Appellate Court. (Ill. App. Ct. Order at 3-5.) The Appellate Court held that (1) the felony murder conviction was valid, because the felony in the instant case (conspiracy to commit insurance fraud) was a "forcible felony" due to the fact that the conspiracy involved the plan to kill Hamilton; and (2) the evidence of Boyce's other crimes and his beating of Williams were properly admitted to establish motive and an intent to ensure William's cooperation in the scheme, respectively. (Ill. App. Ct. Order at 4-5.) There is no basis here to conclude that the appellate court failed to properly apply Illinois law. Even if it had, however, this court would have no authority to grant habeas relief. *Jardine v. Dittmann*, 658 F.3d 772, 777 (7th Cir. 2011) ("[F]ederal courts in § 2254 proceedings defer to state-court descriptions of state law even if they do not agree with those descriptions.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Accordingly, Petitioner's habeas petition is denied.

### III. Certificate of Appealability

The court also declines to issue a certificate of appealability under Rule 11 of the Rules Governing Habeas Corpus Cases. A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2); *see also Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003) (detailing requirements for issuance of a certificate of appealability). As this case presents an application of state law and raises no substantive constitutional issues, Petitioner has failed to do so here.

---

against any individual." 720 ILCS 5/2-8.

**CONCLUSION**

For the foregoing reasons, Petitioner's habeas corpus petition [1] is denied and the court declines to issue a certificate of appealability. Petitioner's pending motions for attorney representation [24, 26] are denied as moot.

ENTER:

Dated: November 7, 2013

REBECCA R. PALLMEYER
UNITED STATES DISTRICT JUDGE